**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE | ) | |
| 1899 L Street, N.W., 12th Floor | ) | |
| Washington, D.C. 20036 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-346 |
| | ) | |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY | ) | |
| 1200 Pennsylvania Avenue, N.W. | ) | |
| Washington, DC 20460 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff COMPETITIVE ENTERPRISE INSTITUTE ("CEI") for its complaint against

Defendant United States ENVIRONMENTAL PROTECTION AGENCY ("EPA" or "the

Agency"), alleges as follows:

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a), to

    compel production under a FOIA request, EPA-HQ-2013-001343, dated November 12,

    2012, seeking emails sent to or from a false-identity email account created for certain

    official correspondence for then-EPA Administrator Lisa Jackson in the name of

    "Richard Windsor."  In addition to naming a non-existent employee as the account

    holder, this account carried no identifying "tagline" information as is customary (*e.g.*,

1

position, phone number).  As such, it violated EPA rules, which require that all parties to correspondence be identified in order for it to constitute the required record.[1]

2. Plaintiff CEI discovered the existence of this account in an Agency document obtained under a previous FOIA request (HQ-FOI-01087-12), and obtained all or parts of several thousand emails containing one of four keywords involving what is popularly known as EPA's "war on coal" under a subsequent request (HQ-FOI-1270-12).

3. EPA at first denied CEI's fee waiver in that latter request on the grounds that there was insufficient public interest in such an account and in what it revealed about operations or activities of the government.[2]  However, those records and this account became the subject of national media coverage, and constitute the overwhelming majority of records posted on EPA's Frequently Requested Records page (*see* EPA, *Frequently Requested Records*, available at http://www.epa.gov/foia/frequent.html).

4. Plaintiff later requested the remaining emails from that illegal "Windsor" account, which records are of significant public interest, for the same reasons as the frequently-requested records already produced in response to the previous request.

---

[1] *See e.g.*, "Are there special requirements for retaining e-mail messages as records?" http://www.epa.gov/records/faqs/email.htm  EPA has since responded to the "Windsor" revelation by revising its instruction to employees, adding, "3. if the e-mail system uses codes, or aliases to identify senders or recipients, a record of their real names is kept for as long as any record containing only the codes or aliases. For example, if you are communicating with someone via the Internet (e.g., a grantee or researcher), and their e-mail address does not indicate who they are (e.g., the address is JerryR@...) then a record must be kept of who they are. This might be done simply by always including their full name in the body of the message."

[2] FOIA provides for waiving of fees associated with FOIA requests under three distinct circumstances including when disclosure of the information is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. 5 U.S.C.S. § 552(a)(4)(A)(iii).

5.   In the request at issue in this matter, after a series of delays and after reversing itself on administrative appeal twice, EPA agreed only to process 100 records per month, over the course of the next 100 years.

6.   This rate is far lower than Agency practice and capabilities.  This also represents about one-thirtieth the rate at which EPA previously processed emails from this same false-identity account (3,000 per month, HQ-FOI-1270-12).

7.   EPA has repeatedly indicated this glacial and wholly improper rate of production are related to the fact that this request was submitted by CEI.

8.   EPA also claims it is holding several other CEI FOIA requests hostage until it completes processing this request, estimated to occur sometime in the 22nd century, unless CEI agrees to place this request on hold.

9.   At EPA's express invitation plaintiff separately appealed this rate of production, then followed with appeals of EPA's increased and seemingly heavy-handed redactions.  EPA denied both appeals and, in the second denial, asserted it would no longer entertain administrative appeals until it completed processing the request at issue in this matter, around the year 2110.

10.   These are several elements demonstrating a pattern and practice of untimely responses to, and deliberate slow-walking of, requests sent by CEI counsel Horner. This practice began after the extensive media, public and congressional-oversight fallout from Horner and CEI exposing the "Windsor" account.  Other elements indicating this is part of a deliberate pattern and practice of targeted delay include EPA emails asserting that requests from CEI counsel Chris Horner, and other groups associated with Horner, are set aside for separate processing.

11. These improper efforts force plaintiff, in particular, to expend significant resources.

12. This pattern of behavior as manifested in the present request is improper and violates FOIA. This biased implementation of the law forces lengthy administrative appeals and then time-consuming litigation, which imposes costs both on CEI and on taxpayers in wasted time and resources.

13. EPA's efforts frustrate the purpose of the Freedom of Information Act.

14. EPA's actions constitute improper means of delaying or otherwise denying plaintiff access to public records.

15. Plaintiff availed itself of the alternative dispute resolution mechanism provided under the 2007 FOIA amendments, which created the Office of Government Information Services (OGIS) to offer mediation services to resolve disputes between FOIA requesters and federal agencies as a non-exclusive alternative to litigation.

16. After six months in that dispute-resolution process, EPA continues to refuse to process this request in line with its custom and practice (in addition to refusing to act on CEI's other requests), leaving plaintiff no option but to file this action.

## **PARTIES**

17. Plaintiff CEI is a public policy research and educational institute in Washington, D.C., dedicated to advancing responsible regulation and in particular economically sustainable environmental policy. CEI's programs include research, investigative journalism and publication, as well as a transparency initiative seeking public records relating to environmental policy and how policymakers use public resources.

18. Defendant EPA is a federal agency headquartered in Washington, DC whose stated mission is to "protect human health and the environment."

## JURISDICTION AND VENUE

19. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B), because this action is brought in the District of Columbia, and 28 U.S.C. § 1331, because the resolution of disputes under FOIA presents a federal question.

20. Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff resides in the District of Columbia, and defendant EPA is a federal agency.

## FACTUAL BACKGROUND
### Plaintiff's FOIA Request EPA-HQ-2013-001343

21. On November 12, 2012, CEI requested "copies of any and all email sent to or from an EPA employee in the Office of the Administrator (OA) from or to an email account in the name of, or email alias, 'Richard Windsor,' from December 15, 2008 to the date you process this request, inclusive."

22. Plaintiff made this request after learning earlier in 2012 of this email account created in the name of a fictitious EPA employee for the use of then-Administrator Lisa Jackson. That revelation and others related to it became a widely reported story that attracted significant public and congressional interest.

23. EPA assigned this request identification number HQ-FOI-2013-001343.

24. On November 30, 2012, EPA denied CEI's request on the grounds that, by the above description, plaintiff did not adequately describe the records it sought.

25. On January 18, 2013 EPA overturned this position on administrative appeal.

26. On February 1, 2013 EPA denied plaintiff's fee waiver, claiming insufficient reason to believe "that the release of the information requested significantly increases the public understanding of government operations or activities."

27. EPA also overturned this position on administrative appeal and on August 28, 2013, after these delays and eight months after plaintiff's request, EPA began producing responsive records.

28. In its letter accompanying its first production of responsive records, EPA informed plaintiff that although it has "located approximately 120,000 responsive records", "to fairly manage our limited resources so as to equitably respond to other Americans who have submitted FOIA requests, 100 documents per month is the production schedule for EPA-HQ-001343."

29. However, this response indicated EPA's consideration of requester's identity in establishing its production schedule, consistent with EPA's regular comments to CEI that plaintiff also having other pending FOIA requests contributes to EPA declining to process 2013-001343 at a normal rate.

30. Other correspondence to plaintiff indicating this approach include a November 16, 2013, email from Jonathan Newton in EPA's Office of the Administrator, informing plaintiff that it would process other CEI  requests, as well as a request submitted by Horner for a non-CEI entity, after it completed processing 2013-001343.

31. Further establishing this pattern and practice, on both September 10, 2013, and February 19, 2014, two different EPA officials involved in processing 2013-001343 informed Horner that it segregates and handles requests "from yourself or your affiliated organizations" [sic] separate from others' requests.

32. In its letters accompanying the monthly 100-document productions, EPA stated "If you have any concerns, you may appeal this response in writing…no later than 30 calendar days from the date of this letter."

33. On November 6, 2013, plaintiff appealed this production schedule of 100-per-month for 100 years, and EPA's refusal to Bates-stamp or otherwise organize responsive records, as inconsistent with EPA's FOIA obligations.

34. On January 7, 2014 EPA denied both items of appeal.

35. On the same date EPA instituted a new delay, stating it had possibly "interpreted your FOIA request too broadly and remanded [CEI's] request for clarification of the scope."

36. On January 16, 2014, after explaining how this latest delay was improper and that there had been no confusion to suddenly discern after over a year of corresponding on the request, plaintiff took the initiative to nonetheless exclude several categories of potentially responsive records as non-responsive, in order to narrow its request and possibly expedite the serially delayed processing.

37. On April 24, 2014, plaintiff appealed EPA's increased application of heavy redactions in its minimal productions.

38. On June 9, 2014, EPA denied this appeal.

39. In this same denial EPA asserted that it would no longer entertain administrative appeals until it completed processing the request at issue in this matter, presently scheduled for sometime in the early 22nd century.

40. Subsequently, in hopes of avoiding litigation, plaintiff contacted OGIS seeking alternative resolution of EPA's refusal to process the request in a timely fashion.

41. After six months in the OGIS process, during which plaintiff suggested several means of narrowing its request, EPA still refuses to provide any more than *de minimis* "productions" in response to CEI's request.

42. Defendant EPA is denying plaintiff the rights and remedies afforded under FOIA.

43. The FOIA expressly grants jurisdiction in the district courts to enjoin an agency from improperly withholding agency records. 5 U.S.C. § 552(a)(4)(B); *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). "Judicial authority to devise remedies and enjoin agencies can only be invoked, under the jurisdictional grant conferred by § 552, if the agency has contravened all three components of this obligation." *Id.*

As the D.C. Circuit has emphasized, in addition to requiring an agency to provide a FOIA requester with a "determination" that indicates "the scope of the documents it intends to produce and withhold," FOIA *also* mandates "actual production" of records in a timely fashion, which "requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013), *citing* 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i). Thus, as the Supreme Court has noted, "even when an agency does not deny a FOIA request outright, the requesting party may still be able to claim 'improper' withholding by alleging that the agency has responded in an inadequate manner." *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 n. 12 (1989)(referring to time limits in 5 U.S.C. § 552(a)(6)(C)); *see also Clemente v. FBI*, 11 F.Supp.3d 18 (D.D.C. 2014).

44. Moreover, courts have jurisdiction to hear a claim alleging a pattern and practice of unreasonable delay in responding to FOIA requests, even where the plaintiff's FOIA request had already been resolved. *See, e.g.*, *Mayock v. Nelson*, 938 F.2d 1006, 1006 (9th Cir.1991); *Payne Enter., Inc. v. United States*, 837 F.2d 486, 491 (D.C.Cir.1988); *see also Long v. IRS*, 693 F.2d 907, 909 (9th Cir.1982) ("In utilizing its equitable powers to

8

enforce the provisions of the FOIA, the district court may consider injunctive relief

where appropriate ... to bar future violations that are likely to occur.")

## FIRST CLAIM FOR RELIEF
### Duty to Produce Records – Declaratory Judgment

45.  Plaintiff re-alleges paragraphs 1-44 as if fully set out herein.

46.  Plaintiff has sought and been denied production of responsive records reflecting the

conduct of official business.  Plaintiff has a statutory right to the information it seeks and

defendant has unlawfully withheld, and failed to provide, responsive records.

47.  EPA improperly refuses to provide a proper determination as provided by 5 U.S.C. §

552(a).

48.  EPA improperly refuses to provide a proper production as provided by 5 U.S.C. §

552(a).

49.  EPA improperly and prejudicially takes plaintiff's identity into account in arriving at its

production schedule.

50.  Plaintiff is entitled to a reasonable determination and production of responsive EPA

records.

51.  Plaintiff is not required to further pursue administrative remedies.

52.  Plaintiff asks this Court to enter a judgment declaring that:

    a.   Plaintiff CEI is entitled to a reasonable volume of production for its FOIA

        request EPA-HQ-2013-001343, and any attachments thereto, but EPA failed to

        do so;

    b.   Plaintiff CEI is entitled to a response and production under FOIA free from

        consideration of or prejudice grounded in its identity, but did not receive such

        treatment;

     c.    EPA's response to plaintiff's FOIA request EPA-HQ-2013-00134 is not in accordance with the law, and does not satisfy EPA's obligations under FOIA;

     d.    EPA must process plaintiff's requests, such as FOIA request EPA-HQ-2013-00134, with productions at a reasonable rate;

     e.    EPA must process CEI's requests without adversely considering CEI's identity or discriminating against it;

## SECOND CLAIM FOR RELIEF
### Duty to Produce Records – Injunctive Relief

53.  Plaintiff re-alleges paragraphs 1-52 as if fully set out herein.

54.  Plaintiff is entitled to injunctive relief compelling EPA to produce responsive records at a reasonable rate, free from consideration of or prejudice grounded in requester's identity, subject to legitimate withholdings.

55.  This Court should enter an injunction ordering EPA to produce to plaintiff, within 10 business days of the date of the order, the requested records described in CEI's FOIA request EPA-HQ-2013-001343, and any attachments thereto.

56. In the alternative, this Court should enter an injunction ordering the defendant to begin processing responsive records at a reasonable rate within 10 business days of the date of the order.

57.  This Court should also order EPA to process CEI's FOIA requests at a reasonable rate, and without adversely considering CEI's identity or discriminating against it.

## THIRD CLAIM FOR RELIEF
### Costs And Fees – Injunctive Relief

58. Plaintiff re-alleges paragraphs 1-57 as if fully set out herein.

59.  Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

60.  This Court should enter an injunction ordering the defendant to pay reasonable attorney fees and other litigation costs reasonably incurred in this case.

WHEREFORE, Plaintiff requests the declaratory and injunctive relief herein sought, and an award for its attorney fees and costs and such other and further relief as the Court shall deem proper.

Respectfully submitted this 11th day of March, 2015,


_____/s/_ Hans Bader_____

Hans Bader

D.C. Bar No. 466545

Hans.Bader@cei.org

Sam Kazman

D.C. Bar No. 946376

sam.kazman@cei.org

1899 L Street NW, 12th Floor

Washington, DC 20036

(202) 331-1010

Christopher C. Horner

D.C. Bar No. 440107

CHornerLaw@aol.com

1489 Kinross Lane

Keswick, VA 22947

(202)   262-4458


ATTORNEYS FOR PLAINTIFF