**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>        Defendant. | Civil Action No. 15-0346 (ABJ) |

**MEMORANDUM OPINION**

Plaintiff, the Competitive Enterprise Institute ("CEI"), filed this case against the United States Environmental Protection Agency ("EPA") to challenge the agency's schedule for producing records under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Since during the pendency of the action, the parties agreed upon a mutually acceptable timetable for a rolling production, and that production is complete, the lawsuit is now moot, and there are no grounds that would support retaining jurisdiction over the matter.

The case arises out of plaintiff's 2012 request for "emails sent to or from a false-identity email account created for certain official correspondence for then-EPA Administrator Lisa Jackson in the name of 'Richard Windsor.'" Compl. [Dkt. # 1] ¶ 1. It called for "copies of any and all email sent to or from an EPA employee in the Office of the Administrator (OA) from or to an email account in the name of, or email alias, 'Richard Windsor,' from December 15, 2008 to the date you process this request . . . ." Compl. ¶ 21. The request called for "all" emails over several years, and it was not limited to any particular subject matter. Compl. ¶ 21. In response to the request, EPA identified approximately 120,000 responsive records, which it announced it would

produce at a rate of 100 records per month "to fairly manage [its] limited resources so as to equitably respond to other Americans who have submitted FOIA requests . . . ." Compl. ¶ 28.

The gravamen of plaintiff's complaint was that this extremely slow pace of production was tantamount to a failure to produce the records at all in violation of FOIA. The first sentence of the first paragraph of the complaint announces: "[t]his is an action under [FOIA] to compel production under a FOIA request . . . ." Compl. ¶ 1. The pleading chides the agency for its "glacial and wholly improper rate of production," Compl. ¶ 7, and it alleges that "EPA's actions constitute improper means of delaying or otherwise denying plaintiff access to public records." Compl. ¶ 14. The claim for relief summarizes CEI's position:

> Plaintiff has sought and been denied production of responsive records reflecting the conduct of official business. Plaintiff has a statutory right to the information it seeks and defendant has unlawfully withheld, and failed to provide, responsive records.

Compl. ¶ 46.

According to plaintiff, by insisting upon the 100 records per month schedule, which would take 100 years, "EPA improperly refuse[d] to provide a proper determination as provided by 5 U.S.C. § 552(a)," and it "improperly refuse[d] to provide a proper production as provided by 5 U.S.C. § 552(a)." Compl. ¶¶ 47, 48. Plaintiff CEI also alleged that EPA was "holding several other CEI FOIA requests hostage until it completes processing this request . . . ." Compl. ¶ 8; s*ee also* Compl. ¶ 16 ("EPA continues to refuse to process this request in line with its custom and practice (in addition to refusing to act on CEI's other requests) . . . ."); Compl. ¶ 30 (referencing an EPA email "informing plaintiff that it would process other CEI requests, as well as a request submitted by [its counsel] for a non-CEI entity, after it completed processing [the November 12, 2012 request].").

Based on these allegations, plaintiff sought both a declaratory judgment and an injunction. Count I asked the Court to enter a judgment declaring that:

> Plaintiff CEI is entitled to a reasonable volume of production for its FOIA request . . . but EPA failed to do so;
>
> Plaintiff CEI is entitled to a response and production under FOIA free from consideration of or prejudice grounded in its identity, but did not receive such treatment;
>
> EPA's response to plaintiff's FOIA request . . . is not in accordance with the law, and does not satisfy EPA's obligations under FOIA;
>
> EPA must process plaintiff's requests . . . with productions at a reasonable rate; [and]
>
> EPA must process CEI's requests without adversely considering CEI's identity or discriminating against it[.]

Compl. ¶ 52.

Count II sought "injunctive relief compelling EPA to produce responsive records at a reasonable rate, free from consideration of or prejudice grounded in [CEI's] identity, subject to legitimate withholdings." Compl. ¶ 54. Specifically, plaintiff asked the Court to order EPA:

1) To produce all of the requested documents within ten days of the entry of the Court's Order; or

2) To begin to produce documents at a reasonable rate within ten days.

Compl. ¶¶ 55–56. In addition, plaintiff asked the Court to order EPA "to process CEI's FOIA requests at a reasonable rate, and without adversely considering CEI's identity or discriminating against it." Compl. ¶ 57. Plaintiff also sought to recover its costs and fees associated with the lawsuit. Compl. ¶ 59.

On May 29, 2015, defendant filed a motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim. Def.'s Mot. to Dismiss [Dkt. # 8] ("Def.'s Mot."); Def.'s Mem. in Supp. of Mot. to Dismiss [Dkt. # 8-1] ("Def.'s Mem."). Plaintiff

opposed the motion. Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss [Dkt. # 9] ("Pl.'s Opp."). Defendant argued that because the agency had determined that it would release responsive records, and it was in fact releasing them on a rolling basis, the Court lacked subject matter jurisdiction over a claim for "improperly withheld" records. Def.'s Mem. at 8–9. It also argued the plaintiff had failed to state a cognizable FOIA claim since the records were being made "promptly available." *Id.* at 13–14.

In response to the motion to dismiss, plaintiff scoffed at the notion that the agency's rate of production could be characterized as making records "promptly available," and it advanced its core contention that "[f]orcing the requester to wait decades for the records it seeks is itself a denial and withholding of those records," which would provide a basis for Article III jurisdiction. Pl.'s Opp. at 4.

While the motion was pending, the Court held a status conference on July 6, 2015, and it inquired whether plaintiff's request could be narrowed and/or the rate of production could be accelerated. Both sides expressed a willingness to participate in mediation, and that day, the Court referred the matter to the Court's Mediation Program. *See* Order (July 6, 2015) [Dkt. 11]. Through that process, the parties reached an agreement and filed a stipulated production schedule, which narrowed the FOIA request by limiting it to a specific time period, and, within that time frame, to specific search terms. *See* Stipulated Production Schedule [Dkt. # 12] at 2. This stipulation reduced the number of responsive records to 3,723 records, and the parties agreed to a rolling schedule of monthly productions. *Id.* at 3. Defendant made each of the required productions under the stipulated schedule, and, on November 13, 2015, the parties informed the Court that production was complete. 3d Joint Status Report [Dkt. # 15] at 2.

The Court then ordered plaintiff to inform the Court whether there were any allegations in the complaint that remained to be resolved or if the matter was moot. *See* Min. Order (Nov. 13, 2015). Plaintiff maintained that there was still a live controversy because it intended to challenge some of defendant's withholdings on privilege grounds. Pl.'s Status Report on Whether the Case is Moot [Dkt. # 16] at 1. The Court then ordered both parties to brief whether the Court had subject matter jurisdiction over the question of whether any documents had been improperly redacted or withheld given the allegations in the complaint. *See* Min. Order (Dec. 3, 2015); Pl.'s Mem. Regarding Subject Matter Jurisdiction [Dkt. # 17] ("Pl.'s SMJ Mem."); Def.'s Mem. Regarding the Court's Subject Matter Jurisdiction [Dkt. # 18] (Def.'s SMJ Mem."). In response to that order, plaintiff set forth authorities in support of its position that the Court had jurisdiction to decide whether the defendant's redactions – for instance, those based on the deliberative process privilege – were improper, and it urged the Court to retain the case. Pl.'s SMJ Mem. at 3–6. Plaintiff also devoted the last two pages of its submission to an argument it failed to make in response to the Court's first minute order eliciting the parties' positions on mootness: this time plaintiff added that the case was not moot because the complaint alleged a "pattern and practice" of delay. *Id.* at 12–14. The Court then ordered the government to respond to plaintiff's argument with respect to the pattern or practice issue. Min. Order (Dec. 21, 2015); Def.'s Mem. in Resp. to the Court's Dec. 21, 2015 Min. Order [Dkt. # 20] ("Gov't's *Payne* Mem."). After considering the parties' submissions, the Court concludes that the matter is moot.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of

5

limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).

Article III, section 2 of the Constitution permits federal courts to adjudicate only "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988), citing *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546 (1976); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). "This limitation gives rise to the doctrines of standing and mootness." *Foretich v. United* States, 351 F.3d 1198, 1210 (D.C. Cir. 2003). A case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990).

When considering whether to dismiss an action for lack of jurisdiction, the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113

(D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). But the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## ANALYSIS

I.    **Both Count I and Count II are moot.**

"The doctrine of mootness is a logical corollary of the 'case or controversy' requirement of Article III of the Constitution. A federal court is constitutionally forbidden to render advisory opinions or 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90–91 (D.C. Cir. 1986), quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). And within the FOIA context, as the D.C. Circuit has explained, "however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform." *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982). Indeed, "[a] declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988), citing *Better Gov't Ass'n*, 780 F.2d at 91.

Here, by virtue of the negotiated resolution, plaintiff has obtained the relief it sought in the form of an injunction in Count II, and that count is moot. And under those circumstances, as the D.C. Circuit has stated, Count I becomes moot as well. "Where an intervening event renders the underlying case moot, a declaratory judgment can no longer 'affect[] the behavior of the defendant

towards the plaintiff,'. . . and thus 'afford[s] the plaintiffs no relief whatsoever.'" *NBC-USA Hous., Inc, Twenty-Six v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012) (citations omitted); s*ee also Long v. Bureau of Alcohol, Tobacco & Firearms,* 964 F. Supp. 494, 497 (D.D.C. 1997) (citations omitted) ("Plaintiffs cannot evade the mootness of their claim by requesting a declaratory judgment. While the Declaratory Judgment Act . . . 'permits a federal court to declare the rights of a party whether or not further relief is or could be sought,' . . . 'a declaratory judgment may not be used to secure judicial determination of moot questions.'"). For those reasons, both Counts I and II should be dismissed.

**II.     The fact that plaintiff is now challenging redactions and withholdings is not enough to confer jurisdiction.**

Plaintiff argues, though, that the case is not moot because the Court must remain available to resolve disputes over withholdings and redactions that the parties cannot resolve between themselves. Pl.'s SMJ Mem. at 3–6. That is true in some circumstances: the D.C. Circuit recognized that a case will not be rendered moot by defendant's production of records in a case where the plaintiff has not only alleged a failure to respond in a timely fashion but also raised a substantive challenge to the withholding of responsive records. *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013). But in this complaint, notwithstanding its references to the fact that plaintiff had already appealed what it characterized as "heavy redactions" in the productions that had been made to date, *see* Compl. ¶¶ 9, 37–38, plaintiff did not ask the court to *do* anything about those redactions. The complaint is devoid of any claim alleging improper withholdings under Exemption 5 or any other exemption, and it seeks no relief in connection with the withholdings. The obvious point of the litigation was to obtain a judicial declaration that producing only 100 of the 120,000 responsive records per month was inconsistent with the FOIA statute, as well as an order requiring production of the

records at a faster pace. Since the request for the only relief sought in this case has been rendered moot, the case will be dismissed.

### III. Plaintiff's allegations about the existence of a "pattern or practice" do not support the exercise of this Court's jurisdiction.

Plaintiff also argues now that this action alleged a "pattern or practice" of "slow-walking" FOIA requests submitted by plaintiff or its counsel, and that even if the rest of the complaint is moot, that claim should remain. Pl.'s SMJ Mem. at 12–14. But it is not clear to the Court that this two-count complaint stated an independent claim that the EPA engaged in an unlawful pattern or practice,[1] and more important, the record does not support the conclusion that there is a risk of future wrongdoing that would warrant retaining jurisdiction over a dispute that is otherwise moot. So again, plaintiff has failed to meet its burden to establish the existence of subject matter jurisdiction.

In Count II, the claim for injunctive relief, plaintiff asserted that "[t]his Court should enter an injunction ordering EPA to produce to plaintiff . . . the requested records described in CEI's

---

1     To state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

request EPA-HQ-2-13-001343 . . . ." Compl. ¶ 55. That request is clearly moot.[2] Similarly, in Count I, plaintiff asked for a series of declarations related to the 2012 request. Plaintiff asked the Court to declare that "Plaintiff CEI is entitled to a reasonable volume of production for its FOIA request EPA-HQ-2013-001343 . . . but EPA failed to do so," Compl. ¶ 52(a), and that "Plaintiff CEI is entitled to **a** response and production under FOIA free from consideration or prejudice grounded in its identity, but did not receive such treatment." Compl. ¶ 52(b) (emphasis added). But as set forth above, once the records have been produced, the request for such a declaration becomes moot. *See Payne Enters.*, 837 F.2d at 491.

It is true that in Count II, plaintiff also asked the Court to "order EPA to process CEI's FOIA request**s** at a reasonable rate, and without adversely considering CEI's identity or discriminating against it." Compl. ¶ 57 (emphasis added). And plaintiff asked for more general declarations in Count I that "EPA must process plaintiff's request**s** . . . with productions at a reasonable rate," and that "EPA must process CEI's request**s** without adversely considering CEI's identity or discriminating against it." Compl. ¶ 52(e) (emphasis added). But in the absence of any underlying factual predicate establishing an ongoing controversy or risk of future illegality that could be resolved by those pronouncements, the Court would be overstepping its role if it issued broad advisory guidance exhorting the defendant to conform its conduct to law in the future.

Plaintiff points to the D.C. Circuit's statement in *Payne Enterprises* that "even though a party may have obtained relief as to a *specific* request under the FOIA, this will not moot a claim

---

2   In paragraph 54, plaintiff introduced its claim of injunctive relief by stating that it was "entitled to injunctive relief compelling EPA to produce *responsive records* at a reasonable rate, free from consideration of or prejudice grounded in requester's identity." Compl. ¶ 54. Since the only "responsive records" CEI identified as being unreasonably late were those related to the one FOIA request described in the complaint, and they have now been produced *period,* there is no point to an injunction ordering EPA to produce them *free from prejudice or any other improper consideration*.

that an agency *policy or practice* will impair the party's lawful access to information in the future."
837 F.2d at 491, citing *Better Gov't Ass'n*, 780 F.2d at 91.[3] The *Payne* court went on:

> So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit.

*Id.* But the circumstances here are not analogous to those in *Payne*, where agency officials withheld records from a requester even after the withholding had been found to be unlawful. Here, the complaint does not explicitly include a claim that there is an agency policy or practice that will impair plaintiff's lawful access to information in the future, and plaintiff points to nothing in the record that would indicate that the challenged delay in producing the tens of thousands of responsive records in this case revealed a broader policy or practice of delaying disclosure or otherwise failing to adhere to the statute when dealing with the plaintiff or its counsel.

In its complaint, plaintiff alleges that when it filed the FOIA request at issue for all of the emails from the allegedly "illegal 'Windsor' account" – which followed another production that included some records revealing the existence of the account – the EPA proposed to produce them at a rate "far lower than Agency practice and capabilities." Compl. ¶ 6. Plaintiff then assserts: "EPA has repeatedly indicated that this glacial and wholly improper rate of production are related

---

3 In *Better Government Association*, the court found that arguments concerning the facial validity of Department of Justice FOIA guidelines were not rendered moot by the resolution of the plaintiff's challenges to those guidelines as applied to their specific requests for fee waivers. 780 F.2d at 90–92. In that case, the Court of Appeals noted that "[t]he challenge to the fee waiver denials was but one claim in the appellants' complaints; the additional counts were directed at the legality of the standards utilized by the appellees." *Id.* at 91. So there, the satisfaction of the claims arising out of individual fee waiver requests did not render the facial challenge to the regulations moot. *Id.* But in this case, there were only two counts, each of which referenced a particular FOIA request.

to the fact that this request was submitted by CEI," Compl. ¶ 7, and it intimates that EPA was punishing plaintiff for public revelation of the existence of the Windsor account, Compl. ¶ 10,[4] but it does not proffer facts in support of that conclusory allegation. *See also* Compl. ¶ 29 ("[T]his response indicated EPA's consideration of requester's identity in establishing its production schedule, consistent with EPA's regular comments to CEI that plaintiff also having other pending FOIA requests contributes to EPA declining to process 2013-001343 at a normal rate."). Plaintiff goes on: "EPA also claims it is holding several other CEI FOIA requests hostage until it completes processing this request, estimated to occur sometime in the 22nd century, unless CEI agrees to place this request on hold." Compl. ¶ 8; *see also* Compl. ¶¶ 30 (referencing an email "informing plaintiff that it would process other CEI requests, as well as a request submitted by [CEI's counsel] Horner for a non-CEI entity, after it completed processing [the November 12, 2012 request]."); and 31 ("[T]wo different EPA officials involved in processing 2013-001343 informed Horner that it segregates and handles requests 'from yourself or your affiliated organizations' . . . separate from others' requests.").[5]

Plaintiff maintains that "[t]his biased implementation of the law forces lengthy administrative appeals and then time-consuming litigation, which imposes costs both on CEI and on taxpayers . . . ," Compl. ¶ 12, and it concludes: "[a]fter six months in [the] dispute resolution

---

4    Paragraph 10 alleges the existence of "several elements demonstrating a pattern and practice of untimely responses to, and deliberate slow-walking of, requests sent by CEI counsel Horner. This practice began after the extensive media, public and congressional-oversight fallout from Horner and CEI exposing the 'Windsor' account. Other elements indicating this is part of a deliberative pattern and practice of targeted delay include EPA emails asserting that requests from CEI counsel Chris Horner, and other groups associated with Horner, are set aside for separate processing."

5    While plaintiff bears the burden of establishing jurisdiction, plaintiff has never supplemented these allegations by supplying the Court with copies of the excerpted emails in their entirety.

process, EPA continues to refuse to process this request in line with its custom and practice (in addition to refusing to act on CEI's other requests), leaving plaintiff no option but to file this action." Compl. ¶ 16.

The *Payne Enterprises* decision arose out of a very specific and different set of circumstances. In that case, officers at Air Force Logistics Command (AFLC) bases began withholding copies of bid abstracts from Payne based on an AFLC policy that directed the agency to withhold that information. 837 F.2d at 488–89. Payne appealed the denials to the Secretary of the Air Force, and the Secretary's Office determined that the claimed FOIA exceptions did not apply and that the records should be released. *Id.* at 489. Notwithstanding the Secretary's decision, certain AFLC officers continued to withhold the bid abstracts from Payne. *Id.* at 490. Payne was forced to sue for declaratory and injunctive relief to retrieve the documents that – as everyone conceded – he was entitled to receive. *Id.* In light of this "impermissible practice" on the part of the Air Force, the D.C. Circuit found that Payne's challenge was not moot because this "agency policy or practice" would impair Payne's "lawful access to information in the future." *Id.* at 491, citing *Better Gov't Ass'n*, 780 F.2d at 91. So the case was premised on both an uncontested finding of illegal conduct and strong evidence of a risk of ongoing wrongdoing.

Here, putting aside plaintiff's conclusory allegations that the agency resented the revelation of the existence of the Windsor account, the complaint does not contain any facts indicating that the records responsive to this request were withheld based upon an underlying practice of discrimination against this plaintiff or that any ongoing impropriety exists. Rather, it indicated, if anything, that EPA was subjecting plaintiff to hostile treatment in connection with its other requests due to the then-pending dispute concerning this request. The complaint alleged that in response to plaintiff's dogged pursuit of a more expeditious schedule for this extremely broad

13

request, EPA was delaying the processing of other pending requests, and it suggested that the agency was using those requests as leverage to pressure plaintiff and its counsel to drop their objections to the 100-records-per-month schedule. *See e.g.*, Compl. ¶ 8 ("EPA also claims it is holding several other CEI FOIA requests hostage until it completes processing this request … unless CEI agrees to place this request on hold.").

But the single bone of contention between the parties has now evaporated, and neither the head of the agency nor the Court has found that the original production schedule was unlawful. Moreover, there is no claim, as in *Payne Enterprises,* that anyone persisted in withholding records after an official decision was made to produce them – indeed, the EPA met all of the rolling production milestones. And finally, there is no allegation in the complaint identifying any other specific FOIA request that was denied or even delayed, and the complaint does not describe any other dispute that needs to be resolved or behavior that needs to be enjoined.

Since the underlying dispute has been completely resolved by consent of the parties, and plaintiff has not pointed the Court to anything in the record that would give rise to a *Payne Enterprises* concern about the existence of an illegal practice that would impair plaintiff's access to records in the future, the action is now moot.

## CONCLUSION

Pursuant to Federal Rules of Civil Procedure 12(b)(1), and for the foregoing reasons, the Court will dismiss plaintiff's complaint.

A separate order will issue.

/s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: January 28, 2016